Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
ETTER, M<sup>C</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA  99201
Phone: (509) 747-9100
Email: carl@ettermcmahon.com
Email: awagley@ettermcmahon.com
*Attorneys for Defendant Jac Dalitso Archer*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JAC DALITSO ARCHER, *et al.*, <br><br> Defendants. | No. 2:25-CR-00113-RLP-9 <br><br> **DEFENDANT ARCHER'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL** |

COMES NOW, Defendant Jac Archer, by and through their counsel of record, Carl J. Oreskovich and Andrew M. Wagley of Etter, McMahon, Lamberson, Van Wert & Oreskovich, P.C., and hereby submits the following Rule 29 Motion for Judgment of Acquittal.  This Motion is made pursuant to Fed. R. Crim. P. 29(a) and supported by the following points and authorities.

Defendant Archer's Motion for
Judgment of Acquittal—Page 1

ETTER, M<sup>C</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## FACTUAL BACKGROUND

The below is a brief recitation of the evidence and testimony presented at trial. A further summary of the evidence and testimony will be offered in oral argument. On June 11, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Joswar Rodriguez Torres and his friend, Cesar Alvarez Perez.

Former Spokane City Council President Ben Stuckart, one of the sponsors of the two illegally detained men, publicly posted on Facebook that he was the legal guardian of a young asylum seeker who was illegally arrested at his ICE check-in and called on others to come and join him. (*See* Ex. 76.) Mr. Stuckart's express intent was to sit in front of the White Bus designated to transport the federal detainees in the facility to Tacoma, Washington for their immigration hearings. (*Id.*) The social media post states in full:

**Ben's Post**    ✕

**Ben Stuckart**
June 11 at 12:52 PM · 🌐

ACTION ALERT: Three weeks ago I became the legal guardian to a young man from Venezuela seeking asylum. He has turned in all paperwork and has a future court hearing. I went with him to ICE check in today. They detained him and are shipping him to Tacoma.

I am asking that if you care at all about these illegal detainers you meet me at 411 West Cataldo by 2pm. I am going to sit in front of the bus. Feel free to join me......

The Latino community needs the rest of our community now. Not tonight, not Saturday but right now!!!!

👍❤️😮 748                    237 comments   300 shares

👍 Like                    ➢ Share

Defendant Archer's Motion for
Judgment of Acquittal—Page 2

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

(*Id.*)  As is apparent by the face of the social media post, Mr. Stuckart did not express any intent to use force, intimidation, or threats towards any officers, but only to passively "sit in front of the bus."  (*Id.*)

The Government presented evidence that Jac Archer and others arrived in response to Mr. Stuckart's social media post.  In turn, Jac Archer posted on social media a call for others to come and join the impromptu protest, stating:



(Ex. 77.)  The intent expressed in this post was to "WAIT OUT ICE" so that ICE may choose to "FREE THIS MAN."  (*Id.*)  Although the post notes that "*some* contingents are choosing to risk arrest to block the exits to ICE," there is clearly no indication of any agreement regarding protest tactics.  (*Id.*)

Defendant Archer's Motion for
Judgment of Acquittal—Page 3

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Jac Archer and others arrived on scene and peacefully sat in front of the White Bus, addressing the crowd via a "bullhorn." (Ex. 601A; Ex. 601C; Ex. 601D.) Specifically, Jac Archer is seen addressing the crowd:



(Ex. 601D.) The "bullhorn" videos discuss that the protest should be conducted non-violently and should not be impulsive. The Government offered evidence that an unnamed individual painted the windshield of the White Bus. Evidence was presented at trial that Jac Archer indicated this unknown individual was "not a protestor" and just a "rando" (*i.e.*, random person). There has been no evidence presented whatsoever that any of these actions were done pursuant to any agreement to commit these acts nor involvement of Jac Archer.

Evidence was presented at trial that Jac Archer indicated the protest, prior to the South Gate incident, was "calm and boring." Archer further indicated that

Defendant Archer's Motion for
Judgment of Acquittal—Page 4

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

a "few high-profile folks" made their way over and people were "calling representatives from the protest."

In relation to Jac Archer, the Government and Defense cross-examination presented evidence regarding a physical altercation between protestors and ICE at the South Gate of the facility. (*See, e.g.,* Ex. 605B; Ex. 605C; Ex. 605G; Ex. 22C; Ex. 23.) Jac Archer is seen in these videos linking arms with a handful of protestors, having their backs to ICE, being separated by Agents, and finally being shoved to the ground by ATF Agent Tomaso:



ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100





Defendant Archer's Motion for
Judgment of Acquittal—Page 6

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

Prior to this interaction, Jac Archer states to the individuals gathered at the South Gate "this is what we talked about."  While it is true that Jac Archer and others stood in front of the South Gate and did not disperse, there is no evidence that any of these protesters used force, intimidation, or threats against the officers.  Instead, they simply attempted to remain in place while being shoved.  The Government offered no evidence that Jac Archer pushed, shoved, or struck ICE, instead relying merely on a theory of force via a "rugby stance."

Following the South Gate physical interaction between protestors and ICE, the Agents went inside the parking lot and the gate itself was allowed to close without incident.  While the Agents were in the South Gate parking lot, no protestors entered the area, threw items at them, or prevented officers from leaving.  The Agents were allowed to return to the facility, although HSI Agent LaForte "flicked off" the hat of a protestor by the South Gate parking lot man-door. (Ex. 27.)  The Agents re-entered the ICE facility, without further incident.

In its case-in-chief, the Government offered no evidence that Jac Archer was at the Red Van, South Skirmish Line, or White Bus following the South Gate incident.  The Government further has offered no evidence whatsoever that Jac Archer directed, coordinated, approved, or even knew of these activities while they were occurring.  Instead, the drone footage after the South Gate

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

incident shows Jac Archer remaining at the South Gate throughout the evening. Testimony was also presented at trial that Jac Archer got home at approximately 2:00 am, hours after the detainees were removed.

Subsequent to the June 11 protest (the next day), evidence was presented that Jac Archer stated the following[1] about the protest:

- I saw a social media post by Ben Stuckart about unlawfully detained asylee. Ben said he was going to sit in front of the White Bus to keep it from leaving, invited anyone and everyone.
- It was beautiful and organized. Those who were risking arrest had information collected for bail and to have their loved ones notified. People who didn't want to risk arrest, but wanted to help, brought snacks and water, someone ordered pizza.
- The group that was on South Gate, our job was to link arms and man that gate, keep anything from going in and out. ICE was not going to kidnap these boys, but they tried.
- We got pushed around, bumped and scrapped and bruised. We held the gate from about 4:00 pm and last protestor did not leave until everyone had a safe way home, until about midnight.
- We didn't do our job, two asylees were eventually abducted. As a community, we were there for each other. We had plans to communicate information. The plan wasn't perfect as it was rapid response.
- When I got to the protest, I gave my full legal name and date of birth to a lawyer who designated herself as the person to make sure we had information for people to be bailed out.
- I made sure that I, and everyone on the South Gate, gave information to either the designated legal person or someone designated to talk to them.
- We planned to resist arrest, but not fight in anyway. We did not plan to de-arrest.

---

[1] This is not a verbatim recitation of the statements, but rather from Defense Counsel's notes during the presentation of the pertinent voice memo to the jury.

Defendant Archer's Motion for
Judgment of Acquittal—Page 8

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

- A lot of the plans had to be put in place, no one on my gate ended up getting arrested. We essentially forced ICE to use a different exit and do a different plan.
- I got pushed around, but luckily for me, I only a few scratches to show for it.
- When my gate decided to disband after providing interviews to news media, and ensuring why people knew why we were there, why we wanted to stay and go on our own terms, and who we were there for, we made sure everyone got home safe.

## STANDARD OF REVIEW

Due Process requires proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361 (1970). Pursuant to Federal Rule of Criminal Procedure 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court must construe the evidence "in the light most favorable to the Government" and ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Amintobia*, 57 F.4th 687, 697 (9th Cir. 2023) (quoting *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010)) (emphasis in *Nevils*). As a judgment of acquittal represents "a ruling that the evidence was 'legally insufficient to sustain a conviction,'" any attempt to appeal by the Government "is barred by the Double Jeopardy Clause." *United States v. Ogles*,

Defendant Archer's Motion for
Judgment of Acquittal—Page 9

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

440 F.3d 1095, 1097 (9th Cir. 2006) (quoting *Smith v. Massachusetts*, 543 U.S. 462 (2005)).

## **POINTS & AUTHORITIES**

Jac Archer is charged with one count of Conspiracy to Impede or Injure Officers in violation of 18 U.S.C. § 372, which provides:

> If two or more persons . . . conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, . . . each of such persons shall be fined under this title or imprisoned not more than six years, or both.

The Government is required to prove beyond a reasonable doubt: "(1) a conspiracy existed, (2) the [defendant] voluntarily entered into the conspiracy, and (3) the members of the conspiracy conspired to prevent by force, intimidation or threat, an officer of the United States from discharging her [or his] duties." *United States v. Beale*, 620 F.3d 856, 864 (8th Cir. 2010).

Section 372 "'was designed to protect Federal officers by providing for Federal prosecution whenever they were injured because of or in the course of their duties.'" *United States v. Rhodes*, 610 F. Supp. 3d 29, 51 (D.D.C. 2022) (quoting *Conspiracy to Impede or Injure an Officer of the United States, 18 U.S.C. § 372*, 1 Op. O.L.C. 274, 276 (1977)). It "'was enacted by a Congress acutely aware of the massive and frequently violent resistance in the southern

Defendant Archer's Motion for
Judgment of Acquittal—Page 10

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

states to federal Reconstruction after the Civil War.'" *Rhodes*, 610 F. Supp. 3d at 51 (quoting *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977)).

As explained fully below, Defendants did not conspire to impede a federal officer by force, intimidation, or threat. Additionally, the application of 18 U.S.C. § 372 to peaceful protesting activities violates the First Amendment.

**A. Non-Violent Protesting is Protected Freedom of Speech.**

"Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Of all constitutional rights, the freedoms of speech and of assembly are the most perishable, yet the most vital to the preservation of American democracy. *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017). Under the First Amendment:

> "[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 758–759, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (opinion of Powell, J.) (quoting *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 776, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978)). The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). **That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government."** *Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

Defendant Archer's Motion for
Judgment of Acquittal—Page 11

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

*Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (emphasis added).

The First Amendment applies to not only speech, but expressive conduct and association. *See White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) ("The right to expressive association includes the right to pursue, as a group, discriminatory policies that are antithetical to the concept of equality for all persons."). "Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment." *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996). Protesting peaceably is clearly protected by the First Amendment. *See, e.g., Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1211 (W.D. Wash. 2020) ("The First Amendment guarantees that all citizens have the right to hold and express their political beliefs through peaceful protests."). As succinctly stated by the Ninth Circuit:

> Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment. Were this not the case, the right of Americans to speak out peacefully on issues and to petition their government would be sharply circumscribed.

*White*, 227 F.3d at 1228.

The First Amendment covers "'vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" *Watts v.*

Defendant Archer's Motion for
Judgment of Acquittal—Page 12

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

*United States*, 394 U.S. 705, 708 (1969) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)); *accord City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) (First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers"). The First Amendment does not permit government "to forbid or proscribe advocacy . . . of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969). Nor can the government prohibit or criminalize speech simply because people feel threatened or intimidated by it. *United States v. National Treasury Employees Union*, 513 U.S. 454, 475 (1995) (fear of serious injury cannot alone justify suppression of free speech and assembly).

**B. The Characterization of a Protest as a Conspiracy Violates the Right to Freedom of Association.**

Instead of responding to the isolated incidents of destructive conduct by arresting and charging those who engaged in it, the Government has chosen to portray the entire protest as a conspiracy and selectively punish certain attendees. This approach has rendered the application of 18 U.S.C. § 372 unconstitutional as applied to this case.

"'An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be

Defendant Archer's Motion for
Judgment of Acquittal—Page 13

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

capable of valid application to others.'" *United States v. Rogers*, 2024 WL 4145135, at *4 (D. Mont. 2024) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)).

> Notwithstanding that political speech and religious exercise are among the activities most jealously guarded by the First Amendment, one is not immunized from prosecution for such speech-based offenses merely because one commits them through the medium of political speech or religious preaching. <u>Of course, **courts must be vigilant to insure that prosecutions are not improperly based on the mere expression of unpopular ideas**</u>. But if the evidence shows that the speeches crossed the line into criminal solicitation, procurement of criminal activity, or conspiracy to violate the laws, the prosecution is permissible.

*United States v. Rahman*, 189 F.3d 88, 117 (2d Cir. 1999) (emphasis added).

Law enforcement "cannot interfere with orderly, nonviolent protests because they disagree with the content of the speech." *Black Lives Matter*, 466 F. Supp. 3d at 1211. "Courts have many times emphasized the importance of government's permitting the public to engage in spontaneous First Amendment activity, such as demonstrations, in response to controversial events." *Collins*, 110 F.3d at 1372. In this vein, the unlawful activity by a few protestors does not transform a peaceful assembly into an unlawful assembly. *See, e.g., Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 834 (9th Cir. 2020) ("The many peaceful protesters, journalists, and members of the general public cannot be punished for the violent acts of others."); *Puente v. City of*

Defendant Archer's Motion for
Judgment of Acquittal—Page 14

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

*Phoenix*, 123 F.4th 1035, 1062 (9th Cir. 2024) ("in assessing whether a sufficient clear and present danger justifies dispersal of a crowd, '[i]t is the tenor of the demonstration as a whole that determines whether the police may intervene; and if it is substantially infected with violence or obstruction the police may act to control it as a unit"); *United States v. Rundo*, 990 F.3d 709, 719 (9th Cir. 2021) (statute unconstitutional to the extent it "prohibits speech tending to 'organize,' 'promote,' or 'encourage' a riot"). Further, "'the proper response to potential and actual violence is for the government to ensure an adequate police presence, and to arrest those who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure.'" *Black Lives Matters*, 466 F. Supp. 3d at 1211 (quoting *Collins*, 110 F.3d at 1372).

Political speech and lawful assembly do not lose First Amendment protection because some members of a crowd chose to engage in disruptive or destructive conduct. *See, e.g., NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982).

> . . . [L]iability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence. For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims. In this sensitive field, the State may not employ means

Defendant Archer's Motion for
Judgment of Acquittal—Page 15

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.

*Claiborne*, 458 U.S. at 920. Similarly, "'guilt by association alone, without [establishing] that an individual's association poses the threat feared by the Government, is an impermissible basis upon which to deny First Amendment rights.'" *Santopietro v. Howell*, 73 F.4th 1016, 1025 (9th Cir. 2023) (quoting *Healy v. James*, 408 U.S. 169, 186 (1972)).

While *NAACP v. Claiborne* addressed civil liability, its prohibition on guilt by association applies with more force to alleged criminal law violations:

> Even outside the context of protected First Amendment expressive association, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause." . . . [T]he "more" cannot consist of inferences of possible criminal involvement based solely on an individual's First Amendment-protected activities and associations.

*Santopietro*, 73 F.4th at 1025 (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). A criminal defendant faces the potential loss of liberty and freedom, as opposed to a mere civil monetary judgment. *See, e.g., In re Winship*, 397 U.S. at 363 ("The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction.").

Defendant Archer's Motion for
Judgment of Acquittal—Page 16

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

This prosecution violates the First Amendment because the Government provided no evidence of any conspiracy besides the mere presence of the Defendants at the same protest. Taking every piece of evidence presented as true, the only association between any of the Defendants is that they "responded to the call" of Stuckart to join him at the ICE office where he planned to sit in front of a bus. There is no evidence that the Defendants agreed with each other to use force, threat, or intimidation against anyone, let alone federal officers. It is hard to imagine a more blatant violation of First Amendment right to free speech and association. The entire premise of this prosecution is clearly barred by the First Amendment and requires that this case be dismissed. *See, e.g., Claiborne*, 458 U.S. at 920; *Santopietro*, 73 F.4th at 1025.

**C. The Government Has Failed to Prove Beyond a Reasonable Doubt Intent to Use Force, Intimidation, or Threats, or That a Reasonable Person Would Interpret a Serious Expression of Intent to Use Force, Intimidation, or Threats.**

1.  <u>To Comport with the First Amendment, the Government Must Prove Intent to Use Force, Threat, or Intimidation Under 372.</u>

Despite the First Amendment's vast reach, not all speech is constitutionally protected. *See, e.g., United States v. Keyser*, 704 F.3d 631, 637 (9th Cir. 2012) ("Famously, the First Amendment does not protect someone who falsely cries 'fire' in a crowded theater."). "It is well established that the First Amendment

Defendant Archer's Motion for
Judgment of Acquittal—Page 17

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

does not prohibit the government from criminalizing speech that is integral to criminal conduct." *United States v. Payne*, 2017 WL 8941311, at \*5 (D. Nev. 2017), *report and recommendation adopted*, 2017 WL 480392 (D. Nev. 2017). The First Amendment does not protect threatening speech, harassment, blackmail, extortion, or other "true threats." *See, e.g., United States v. Hanna*, 293 F.3d 1080, 1084 (9th Cir. 2002).  A statement is a "true threat" if: (1) "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault," and (2) "the speaker subjectively intended the speech as a threat." *United States v. Stewart*, 420 F.3d 1007, 1016-17 (9th Cir. 2005).

In this vein, Section 372 is facially valid because it "requires proof of a defendant's intent to prevent a federal officer from discharging his or her duties by force, threat, or intimidation." *Payne*, 2017 WL 8941311, at \*7; *accord United States v. Bundy*, 2016 WL 3156310, at \*3 (D. Or. 2016).

> The mens rea requirement of § 372 prevents the statute from applying to mere hyperbole or criticism of government officials or to circumstances in which an official subjectively felt intimidated or threatened because this type of conspiracy requires proof the defendant intended to prevent the officer from discharging his or her duties, and proof the defendant accomplished that objective by using force, intimidation, or threats.

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

*Payne*, 2017 WL 8941311, at *9. That is, § 372 "does not regulate or chill speech otherwise protected by the First Amendment" because "in order to run afoul of § 372 an individual must intend to agree with another person to prevent a federal official from discharging his or her official duties by force, intimidation, or threat." *Bundy*, 2016 WL 3156310, at *3.

As with the "true threat" standard, § 372 includes both a subjective intent and objective standard: (1) "the speaker or actor must intend his or her words or conduct to intimidate or to be a threat," and (2) "those words or conduct [must be] such that a reasonable person hearing or observing them would foresee that they would be interpreted as a serious expression of intent to harm or assault." *United States v. Ehmer*, 87 F.4th 1073, 1120-21 (9th Cir. 2023) (italics removed). Both elements are required to pass constitutional muster.

2. <u>The Government Has Failed to Prove Beyond a Reasonable Doubt That Defendants Used, or Conspired to Use, Force, Intimidation, or Threats.</u>

Neither the subjective nor objective intent standards was established in the Government's case-in-chief. In this vein, the Court's Proposed Jury Instruction No. 15, states in pertinent part:

> An act involves "force" if it threatens or results in violence or if it threatens or results in harming or destroying property or harming or killing people. Merely tensing up or merely resisting does not, by itself, constitute "force."

Defendant Archer's Motion for
Judgment of Acquittal—Page 19

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

In order for speech or expressive conduct to qualify as "intimidation" or a "threat" in this context: (1) the speaker or actor must intend his or her words or conduct to intimidate or to be a threat, and (2) those words or conduct must also be such that a reasonable person hearing or observing them would foresee that they would be interpreted as a serious expression of intent to harm or assault.

(Proposed Instruction No. 15.)

Applying these definitions to the Government's case-in-chief reveals its fundamental deficiency and failure to pass constitutional muster. The evidence clearly lays out the intent and object of Jac Archer and others: to respond to Ben Stuckart's social media post, stating his plan to "sit in front of the bus" that was being used by ICE to transport a Venezuelan man to Tacoma. In turn, Jac Archer's social media states: "WE NEED MORE BODIES. THERE IS A NON ZERO CHANCE WE CAN WAIT OUT ICE AND THEY MAY FREE THIS MAN. . . . We are still here. Some contingents are choosing to risk arrest to block the exit to ICE." Consistent with the social media posts, the Government's theory is that Jac Archer and others blocked the pathway and door to the White Bus and blocked the South Gate by linking arms.

There is thus no evidence that any Defendant, and certainly not Defendant Archer, subjectively intended their calls to protest and civil disobedience to use force, intimidation, or threat. Nor would a reasonable person hearing these

Defendant Archer's Motion for
Judgment of Acquittal—Page 20

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

words interpret them to be a serious expression of intent to do so.  Rather, their posts and alleged conduct make clear that the subjective intent was to bring attention to the plight of the illegally abducted men and non-violently block the transport bus, in the hopes that they could wait out ICE and persuade it to release the men.

The tactics in the calls to action are time-worn and protected methods of civil disobedience.  Acts of civil disobedience are intended to get the government's attention and invite change.  But the act of lying, sitting, or standing in front of a government building does not, by any stretch of the imagination, meet the definitions of force, threat, or intimidation.  Neither does linking arms at the South Gate constitute any form of force, threat, or intimidation.

The Government's theory of the case to mischaracterize nonviolent civil disobedience as a violent conspiracy to use force, intimidation, or threats does not make it so.  Because the Government has not proven Defendants engaged in a conspiracy to impede or injure a federal office by force, intimidation, or threat, a judgment of acquittal is warranted.

**D. In the Alternative, or in Addition Thereto, the Government Has Not Proven an Agreement to Establish a Conspiracy.**

Defendant Archer's Motion for
Judgment of Acquittal—Page 21

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

The Government has not established the requisite conspiracy for a conviction pursuant to § 372.  Pursuant to Proposed Jury Instruction No. 13:

> A conspiracy is a kind of criminal partnership - an agreement of two or more persons to engage in illegal conduct.  The crime of conspiracy is the agreement itself to do something unlawful; it does not matter whether the crime agreed upon was actually committed. For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.  **It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another**.  You must find that there was a plan to commit at least one of the crimes alleged in A-D in the following instruction (as set forth in the Indictment) as an object or purpose of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

(Proposed Instruction No. 13 (emphasis added).)

Viewing the evidence presented in the Government's case-in-chief as true, it has not established the requisite agreement for a conspiracy.  The only communications between the Defendants the Government has offered is mere messages sharing (or in the Government's wording "dissemination of") Mr. Stuckart's social media post.  (Ex. 78.)  In one of these messages, Jac Archer indicates: "Those of us who can, should" and a call for individuals "to thoughtfully risk arrest." (*Id*. at pp. 5-6.)  There is nothing illegal about collecting bail information from individuals willing to risk arrest for mere civil disobedience.  The same applies to risking arrest for civil disobedience by

Defendant Archer's Motion for
Judgment of Acquittal—Page 22

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

linking arms.  Mere association and attendance at a protest is not an agreement to use force, intimidation, or threat.

### CONCLUSION

Not only does this prosecution violate the First Amendment, but no rational jury could conclude that the Government has proven its case beyond a reasonable doubt.  Based upon the foregoing, Defendant Archer respectfully requests that the Court grant this Rule 29 Motion for Judgment of Acquittal.

RESPECTFULLY SUBMITTED this 22nd day of May, 2026.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.

By:  /s/ Andrew M. Wagley
Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
*Attorneys for Defendant Archer*

Defendant Archer's Motion for
Judgment of Acquittal—Page 23

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 22nd day of May, 2026 in Spokane, WA.

By:   /s/ Andrew M. Wagley
      Andrew M. Wagley

Defendant Archer's Motion for
Judgment of Acquittal—Page 24

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100