Jessica Wolfe, WSBA No. 52068
La Rond Baker, WSBA No. 43610
**American Civil Liberties Union of Washington Foundation**
P.O. Box 2728
Seattle, WA 98111
Telephone: 206.624.2184
jwolfe@aclu-wa.org
baker@aclu-wa.org

Attorneys for *Amicus* American Civil Liberties Union of Washington Foundation

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

THE HONORABLE REBECCA PENNELL

United States of America,

Plaintiff,

v.

Justice Forral, Bajun Dhunjisha Mavalwalla II, and Jac Dalitso Archer,

Defendants.

No. 2:25-cr-00113-RLP-2
2:25-cr-00113-RLP-8
2:25-cr-00113-RLP-9

AMICUS BRIEF OF AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION IN SUPPORT OF DEFENDANTS' RULE 29 AND RULE 33 MOTIONS



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................6

II. ARGUMENT ..........................................................................................7

A. This Court Should Order An Evidentiary Hearing to Determine if The Department of Justice Selectively Prosecuted the Spokane 3 in Violation of The First Amendment. ....................................................................7

1. The Trump Administration is Targeting ICE Protesters with Conspiracy Charges. ....................................................................................8

2. The Selective Prosecution of ICE protesters Because of Their Political Views Violates The First Amendment. .............................................15

B. In Closing Argument, The Government Endorsed a Broad Reading of Section 372 That Criminalizes Speech and Association Protected by The First Amendment. ..............................................................................20

1. To Comport With the First Amendment, Section 372's Prohibition on "force, threat, or intimidation" Must be Narrowly Construed to Only Criminalize Speech That Rises to the Level of a "true threat." ....................21

2. To Protect the First Amendment Right to Association, Section 372 Must Be Narrowly Construed So That The Individual Criminal Acts of a Few Protesters are Not Imputed to The Entire Group. ...................................255

C. CONCLUSION ........................................................................................29



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

# TABLE OF AUTHORITIES

## Federal Cases

*Boos v. Barry*, 485 U.S. 312 (1988)....................20

*Bose Corp. v. Consumer Union of United States, Inc.,* 466 U.S. 485 (1984) .. 20, 29

*City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987) ....................22

*Counterman v. Colorado*, 600 U.S. 66 (2023) .................... 21, 22, 24, 28

*Duran v. City of Douglas, Ariz.*, 904 F.2d 1372 (9th Cir. 1990).................... 22, 23, 24

*Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011) .................... 15, 17

*Krulewitch v. United States*, 336 U.S. 440 (1949)....................19

*N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).................... passim

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995)....................16

*United States v. Anten*, 184 F.4th 1115 (9th Cir. 2026).................... 21, 22

*United States v. Armstrong*, 517 U.S. 456 (1996) .................... 8, 15, 16, 17, 19

*United States v. Crowthers*, 456 F.2d 1074 (4th Cir. 1972)....................17

*United States v. Ehmer*, 87 F.4th 1073 (9th Cir. 2023) ....................22

*United States v. Falk*, 479 F.2d 616 (7th Cir. 1973)....................17

*United States v. Hanna*, 293 F.3d 1080 (9th Cir. 2002) .................... 20, 28, 29

*United States v. Judd*, 579 F.Supp.3d 1 (D.D.C. 2021)....................19

*United States v. Lincoln*, 403 F.3d 703 (9th Cir. 2005).................... 20, 28, 29

*United States v. Navarro*, 627 F. Supp. 3d 1 (D.D.C. 2022)....................16



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

*United States v. Payne*, 2017 WL 480392 (D. Nev. Feb. 2, 2017)..........................22

*United States v. Poocha*, 259 F.3d 1077 (9th Cir. 2001)................................. 23, 24

*United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972) ..........................................17

*United States v. Wilson*, 123 F.4th 1021 (9th Cir. 2024)........................................16

*Watts v. United States*, 394 U.S. 705 (1969) .........................................................21

*Wayte v. United States*, 470 U.S. 598 (1986) .........................................................15

**Statutes**

18 U.S.C. § 372 ............................................................................................ passim

**Publications and Books**

A.C. Thompson & Gabrielle Schonder, "Caught in the Crackdown: As Arrests at Anti-ICE Protests Piled Up, Prosecutions Crumbled," ProPublica and FRONTLINE (April 14, 2026) ..................................................11

Alan Feuer and Ernesto Londono, "U.S. Investigated Left-Leaning Groups During Minnesota Immigration Crackdown," N.Y. Times (Aug. 13, 2026).......14

Alan Feuer, et al., "'Go Big and Go Loud': Inside the Justice Dept.'s Push to Prosecute Protesters," New York Times (Mar. 19, 2026)...................................13

Alexandra Duggan, "Former leader of federal prosecutors in Spokane criticizes outcome of ICE protest trial, the first of its kind locally," The Spokesman-Review (May 29, 2026) .........................................................6

Alexandra Duggan, "The arrest of the 'Spokane 9' stained by accusations of political justice," The Spokesman-Review (Sept. 21, 2025) ................................9

Hannah Meisel, "Feds say they'll drop conspiracy charge against remaining 'Broadview Six' protesters," CBS (April 29, 2026) ..........................................12



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

Human Rights Watch, "'A Manufactured Crisis': Minnesota Communities Terrorized by the Federal Government" (June 18, 2026) ....................................13

Jon Seidel, "What to know about the 'Broadview Six' scandal rocking Chicago's federal courthouse," Chicago Sun-Times (June 27, 2026) .................11

Office of Public Affairs, U.S. Dep't of Justice, "15 Members of Direct Action Minnesota, a Minneapolis-Based Direct Action Group with Antifa Ties, Indicted" (June 16, 2026) ....................................................................14

Office of the Attorney General, "Memorandum: Ending Political Violence Against ICE" (Sept. 29, 2025)..........................................................................13

President Donald J. Trump, "National Security Presidential Memorandum/NSPM-7: Countering Domestic Terrorism and Organized Political Violence" (Sept. 25, 2025)...................................................................12

Sarah N. Lynch, "Prosecutors told to prioritize, publicize cases tied to Trump immigration protests," Reuters (June 12, 2025)........................................9

Shrai Popot, "Whistleblower report alleges Trump ordered FBI investigation on LA anti-ICE protesters," The Guardian (Oct. 6, 2026)..................................11

Sophie Hurwitz, "Washington Protesters Convicted of 'Conspiracy to Impede' ICE Agents," Mother Jones (May 29, 2026) ..........................................7

Thomas Brzozowski, "The Dangerous Drift to Redefine Protest as Terrorism," Lawfare (Feb. 2, 2026) ..................................................................18

**Law Review Article**

Steffen Seitz, "Conspiracy and Social Movements, 124 Mich. L. Rev. 609 (2026).................................................................................................. 25, 28



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

## I. INTRODUCTION

The "Spokane 3"—Justice Forral, Jac Archer, and Bajun Mavalwalla—participated in a protest at a federal building to prevent the transfer of ICE detainees through acts of civil disobedience. In the prosecution's own words, none of the Spokane 3 committed "crimes of violence, violent felonies, or violent conduct." ECF No. 345 at 7. Yet the Department of Justice indicted them in response to extreme pressure from the Trump Administration to target ICE protesters. The Spokane 3 were charged with, and ultimately convicted of, conspiracy to use "force and threats against, and intimidation of federal agents" in violation of 18 U.S.C. § 372. ECF No. 1 at 2. As the former Assistant United States Attorney for the Eastern District of Washington explained, these charges were intended to "punish members of the Spokane community who stood up for two young men who were unlawfully detained by ICE."[1]

Amicus has grave concerns that the Spokane 3 were selectively prosecuted to punish vocal government critics and suppress dissent in violation of the First

---

[1] Alexandra Duggan, "Former leader of federal prosecutors in Spokane criticizes outcome of ICE protest trial, the first of its kind locally," The Spokesman-Review (May 29, 2026), https://www.spokesman.com/stories/2026/may/28/former-leader-of-federal-prosecutors-in-spokane-cr/.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

Amendment. Additionally, Amicus wishes to highlight the prosecution's troubling closing argument, which urged the jury to find the Spokane 3 guilty based on protected speech and association. This Court should grant the Spokane 3's request for discovery and an evidentiary hearing on the selective prosecution claim, *see* ECF No. 428 at 67–75, as well as independently assess whether the jury's verdict rests on unconstitutional grounds. *Id*. at 56–59; ECF No. 429 at 19–25.

## II. ARGUMENT

### A. This Court Should Order An Evidentiary Hearing to Determine if The Department of Justice Selectively Prosecuted the Spokane 3 in Violation of The First Amendment.

The Spokane 3 were "among the first ICE protesters to be brought up on conspiracy charges."[2] Yet, since this case was initiated, charging protesters with conspiracy has "become a common prosecutorial tactic" under the second Trump administration[3]—a concerning national trend that Amicus believes is intended to target and suppress dissent of the Administration's harsh immigration tactics.

[2] Sophie Hurwitz, "Washington Protesters Convicted of 'Conspiracy to Impede' ICE Agents," Mother Jones (May 29, 2026), https://www.motherjones.com/politics/2026/05/spokane-3-washington-ice-conspiracy-conviction-court-rally-dhs-protest/.

[3] *Id*.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

Because the First Amendment prohibits such selective prosecutions, Amicus urges this Court to carefully scrutinize the circumstances that gave rise to these charges.[4] At a minimum, Amicus believes the Spokane 3 have met the threshold for discovery and an evidentiary hearing on this claim. *See United States v. Armstrong*, 517 U.S. 456, 468-69 (1996) (defendants must show "some evidence" of a discriminatory effect to be entitled to discovery on a selective prosecution claim).

1. The Trump Administration is Targeting ICE Protesters with Conspiracy Charges.

The Government alleged that on June 11, 2025, protesters gathered at a federal building to prevent the transfer of two immigration detainees to the Tacoma Detention Center. ECF No. 1 at 3 (Indictment). As articulated in the Government's trial brief, the protesters employed various non-violent tactics to achieve this aim, including sitting around the transfer bus, standing with their arms linked in front of the building's exits, and placing makeshift barriers in front of the gates. ECF No. 307 at 4–5. A handful of protesters engaged in individual acts of vandalism,

[4] Justice Forral filed a pre-motion to dismiss based on selective prosecution, but this Court dismissed it as untimely. ECF Nos. 278, 280, 282, 287. They have re-raised this claim in their Motion for Judgment of Acquittal. ECF No. 428 at 67–75. Jac Archer has joined Justice Forral's Motion in full. ECF No. 440.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

including deflating and slashing the tires. *Id.* There were also some scuffles between protesters and federal officers. *Id.* at 5. But there was no violence, no injuries, and no major property destruction. *See, e.g.*, ECF No. 345 at 7. And, despite the protest, federal agents were able to successfully transfer the detainees to Tacoma that evening. ECF No. 428 at 20.

The very next day, Department of Justice (DOJ) Associate Deputy Attorney General Aakash Singh sent an email to all 93 U.S. Attorneys, ordering them to prioritize charging protesters of Trump's immigration policies.[5] Mr. Singh directed the U.S. Attorneys to "[p]ush out press releases whenever you file charges in these matters," warning "[t]here should be no bottleneck of referrals for complaints and legal process."[6]

Richard Barker, the former U.S. Attorney for the Eastern District of Washington, refused to follow that edict.[7] Rather than charge the Spokane protesters

---

[5] Sarah N. Lynch, "Prosecutors told to prioritize, publicize cases tied to Trump immigration protests," Reuters (June 12, 2025), https://www.reuters.com/world/us/prosecutors-told-prioritize-publicize-cases-tied-trump-immigration-protests-2025-06-12/.

[6] *Id.*

[7] Alexandra Duggan, "The arrest of the 'Spokane 9' stained by accusations of political justice," The Spokesman-Review (Sept. 21, 2025),



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

with federal crimes, Mr. Barker resigned.[8] He stated he was "concerned about the Department's senior leadership in Washington D.C., staying true to the values of what we hold dear: upholding the rule of law without fear or favor."[9]

Mr. Barker was soon replaced by Stephanie Van Marter, who dutifully filed Section 372 conspiracy charges against the Spokane 3 and six other protesters. ECF No. 1. Mr. Barker later decried these charges as the "first conspiracy prosecution in Eastern Washington history under 18 U.S.C. Section 372—a Civil War-era law dusted off to punish members of the Spokane community who stood up for two young men who were unlawfully detained by ICE."[10]

Other U.S. Attorneys across the nation similarly heeded the Trump Administration's call to charge protesters of immigration crackdowns, with mixed or disastrous results.

//

---

https://www.spokesman.com/stories/2025/sep/21/the-arrest-of-the-spokane-9-stained-by-accusations/.

[8] *Id.*

[9] *Id.*

[10] *Supra* n.1.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

In Southern California, over one hundred protesters were arrested, and several were charged with conspiracy.[11] However, more than a third of those arrests ultimately resulted in no charges, or charges being dropped, or acquittal, while approximately a third are still pending.[12] A government whistleblower recently revealed that protesters in California were charged on the direct orders of President Trump, who demanded that the FBI initiate an investigation because he was "angry" about the protests—and that the FBI complied for the sake of "optics" and to "make a show for the president."[13]

In Chicago, six protesters—most of whom happened to be prominent in local Democratic politics—were targeted with Section 372 charges for banging on the windows of an ICE vehicle at the Broadview ICE facility.[14] However, it took three

[11] A.C. Thompson & Gabrielle Schonder, "Caught in the Crackdown: As Arrests at Anti-ICE Protests Piled Up, Prosecutions Crumbled," ProPublica and FRONTLINE (April 14, 2026), https://www.propublica.org/article/caught-in-crackdown-ice-cbp-doj-trump-arrests-convictions.

[12] *Id*.

[13] Shrai Popot, "Whistleblower report alleges Trump ordered FBI investigation on LA anti-ICE protesters," The Guardian (Oct. 6, 2026), https://www.theguardian.com/us-news/2026/oct/06/trump-fbi-ice-la-protesters.

[14] Jon Seidel, "What to know about the 'Broadview Six' scandal rocking Chicago's federal courthouse," Chicago Sun-Times (June 27, 2026), https://chicago.suntimes.com/crime/2026/06/27/broadview-six-boutros-chicago.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

separate grand juries to deliver an indictment,[15] and the charges were eventually dropped after it came to light that the prosecutor committed misconduct during the grand jury proceedings.[16]

In the interim, the Trump administration continued to step up its rhetoric regarding ICE protests. In September 2025, President Trump issued "National Security Presidential Memorandum 7" (NSPM-7),[17] mischaracterizing overwhelmingly peaceful protests as "political violence" and citing, *inter alia*, "extremism on migration" as justifying "a national strategy to investigate and disrupt networks, entities, and organizations that foment political violence."[18] In lockstep, Attorney General Pam Bondi issued a memorandum focused on "ending *political* violence against ICE" and directing federal officers to "suppress all unlawful rioting" and "arrest and prosecute to the fullest extent of the law every person who

---

[15] Hannah Meisel, "Feds say they'll drop conspiracy charge against remaining 'Broadview Six' protesters," CBS (April 29, 2026), https://www.cbsnews.com/chicago/news/broadview-six-protesters-conspiracy-charge-federal-prosecutors/.

[16] *Supra* n.14.

[17] President Donald J. Trump, "National Security Presidential Memorandum/NSPM-7: Countering Domestic Terrorism and Organized Political Violence" (Sept. 25, 2025), https://www.whitehouse.gov/presidential-actions/2025/09/countering-domestic-terrorism-and-organized-political-violence/.

[18] *Id*.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

aids, abets, or conspires to commit these crimes, whether through funding, coordination, planning or other means."[19]

Next came Operation Metro Surge in Minnesota, which resulted in large-scale protests, mass arrests, and the killings of Renee Good and Alex Pretti.[20] After Mr. Pretti was shot and killed by ICE officers, Associate Deputy Attorney General Aakash Singh continued to urge federal prosecutors to "[g]o big and go loud" in charging protesters, promising that the Trump Administration would be "blasting out" the results.[21]

The trial against the Spokane 3 was widely viewed as a test of the Administration's protest suppression efforts. After successfully securing convictions against the Spokane 3, the DOJ promptly charged 15 members of "Direct Action

---

[19] Office of the Attorney General, "Memorandum: Ending Political Violence Against ICE" (Sept. 29, 2025), https://www.justice.gov/ag/media/1415691/dl?utm_medium=email&utm_source=govdelivery (emphasis added).

[20] Human Rights Watch, "'A Manufactured Crisis': Minnesota Communities Terrorized by the Federal Government" (June 18, 2026), https://www.hrw.org/report/2026/06/18/a-manufactured-crisis/minnesota-communities-terrorized-by-the-federal-government.

[21] Alan Feuer, et al., "'Go Big and Go Loud': Inside the Justice Dept.'s Push to Prosecute Protesters," New York Times (Mar. 19, 2026), https://www.nytimes.com/2026/03/19/us/politics/justice-dept-prosecute-protesters.html.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

Minnesota" with conspiracy under Section 372.[22] Similar to the Spokane 3, the members of Direct Action Minnesota are alleged to have blocked the roads around a federal building.[23] As evidence of conspiracy, the DOJ's press release highlighted that the members of Direct Action Minnesota self-identified as "Antifa" and "anarchists," endorsed "communist views," and were committed to "community organizing," "digital campaigning," "workplace struggle," and "housing justice"—in short, that their political views were disfavored by the Administration.[24]

After the Minnesota charges were announced, it was revealed that the federal government engaged in a far-reaching investigation targeting left-leaning political organizations across the state, including "labor unions, a climate change group, [and] socialist collectives."[25] The investigation was "an expansive covert surveillance operation in which undercover agents spied on protesters and organizers at meetings

---

[22] Office of Public Affairs, U.S. Dep't of Justice, "15 Members of Direct Action Minnesota, a Minneapolis-Based Direct Action Group with Antifa Ties, Indicted" (June 16, 2026), https://www.justice.gov/opa/pr/15-members-direct-action-minnesota-minneapolis-based-direct-action-group-antifa-ties.

[23] *Id.*

[24] *Id.*

[25] Alan Feuer and Ernesto Londono, "U.S. Investigated Left-Leaning Groups During Minnesota Immigration Crackdown," N.Y. Times (Aug. 13, 2026), https://www.nytimes.com/2026/08/13/us/politics/dhs-inquiry-immigration-protests-minnesota.html.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

held online, as well as in libraries, parks and churches."[26] The former chief of the criminal division of the U.S. Attorney's office in Minnesota denounced the blatant political targeting: "An investigation should begin with a legitimate basis to suspect criminal conduct, not with a chosen institution or group."[27]

2. The Selective Prosecution of ICE protesters Because of Their Political Views Violates The First Amendment.

While the DOJ has the authority to prosecute those who violate the law, its selective enforcement of criminal laws is "subject to constitutional restraints."[28] *Wayte v. United States*, 470 U.S. 598, 608 (1986) (citation omitted). The First Amendment, together with the equal protection guarantee of the Due Process Clause of the Fifth Amendment, prohibits the DOJ from pursuing politically motivated prosecutions. *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011).[29] Here, it appears that DOJ

---

[26] *Id*.

[27] *Id*.

[28] Amicus does not mean to suggest that the evidence is sufficient to sustain the Section 372 convictions, and notes each of the Spokane 3 have raised sufficiency arguments in their Rule 29 and Rule 33 Motions.

[29] In *Hoye*, Ninth Circuit noted that selective enforcement claims based on protected speech have been characterized by some courts as a violation of the First Amendment, and by others as a violation of equal protection. *Hoye*, 653 F.3d at 855. The Court concluded that "[a]ny difference between these two approaches is, at least



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

has prioritized charging protestors of Trump's immigration policies with the aim of suppressing dissent.

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. "A forbidden reason can include prosecution of a defendant based on his political beliefs." *United States v. Navarro*, 627 F. Supp. 3d 1, 4 (D.D.C. 2022) (citation omitted); *see also United States v. Wilson*, 123 F.4th 1021, 1033 (9th Cir. 2024) ("[T]he Constitution commands that prosecutors may not charge only those perpetrators whose race, religion, or *political viewpoints* are disfavored by the government.") (Donato, D.J., concurring) (emphasis added).

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys," and "[d]iscrimination against speech because of its message is presumed to be unconstitutional" under the First Amendment. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819,

---

in this case, semantic rather than substantive," because both provisions required proof that the "content-discriminatory enforcement" was the "the result an intentional policy or practice." *Id*.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

828 (1995). Accordingly, a conviction cannot stand when the government has sought "to suppress a viewpoint it does not wish to hear under the guise of enforcing a general regulation." *United States v. Crowthers*, 456 F.2d 1074, 1079 (4th Cir. 1972). Indeed, "focus[ing] upon the vocal offender is inherently suspect, since it is vulnerable to the charge that those chosen for prosecution are being punished for their expression of ideas, a constitutionally protected right." *United States v. Steele*, 461 F.2d 1148, 1152 (9th Cir. 1972); *see also United States v. Falk*, 479 F.2d 616, 622–23 (7th Cir. 1973) (remanding for an evidentiary hearing where the defendant "made out at least a *prima facie* case of improper discrimination in enforcing the law" in retaliation for protected First Amendment speech).

To demonstrate a prosecution is impermissibly selective, a defendant must show that the decision to prosecute (1) "had a discriminatory effect" and (2) "was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465. The U.S. Supreme Court has held the "discriminatory effect" prong is satisfied by evidence that "similarly situated individuals" were not prosecuted. *Id*. However, the Court left open the possibility that "direct admissions by prosecutors of discriminatory purpose" would suffice. *Id*. at n.3 (cleaned up); *see also Hoye*, 653 F.3d at 855–56



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

(holding a selective enforcement claim may be premised on a public official's "own pronouncements definitively articulat[ing] a content-discriminatory enforcement policy.")

Here, there is a direct admission of discriminatory animus by the former U.S. Attorney for this District, Richard Barker, who resigned in response to pressure to bring charges against the Spokane 3. After the Spokane 3 were convicted, Mr. Barker affirmed that the prosecutions were intended "to punish members of the Spokane community who stood up for two young men who were unlawfully detained by ICE."[30]

The discriminatory purpose is likewise clear. The Trump Administration has affirmatively ordered line prosecutors to aggressively investigate and charge ICE protesters. As articulated by the DOJ's former Counsel for Domestic Terrorism, Thomas Brzozowski, these directives "invite investigations that begin with ideology and work backwards to find crimes" with "'anti-ICE protest culture' as the target."[31]

---

[30] *Supra* n.1.

[31] Thomas Brzozowski, "The Dangerous Drift to Redefine Protest as Terrorism," Lawfare (Feb. 2, 2026), https://www.lawfaremedia.org/article/the-dangerous-drift-to-redefine-protest-as-terrorism.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

"Especially during moments of politically charged unrest, the Justice Department must strive for even-handed justice." *United States v. Judd*, 579 F.Supp.3d 1, 9 (D.D.C. 2021). That is not what happened here. The Trump Administration pressured prosecutors to "go big and go loud" in pursuing cases against ICE protesters[32] with the "elastic, sprawling and pervasive offense" of conspiracy, and with the stated goal of suppressing so-called "extremism on migration."[33] *See Krulewitch v. United States*, 336 U.S. 440, 445 (1949) (Jackson, J., concurring). In the views of Amicus, the charges against the Spokane 3 are discriminatory in both effect and purpose and rise to the level of an unconstitutional selective prosecution. *See Armstrong*, 517 U.S. at 465. At a minimum, the Spokane 3 have met the threshold of presenting "some evidence" of selective prosecution, and are thus entitled to discovery and an evidentiary hearing on this claim. *Id*. at 468.

//

[32] *Supra* n.21.
[33] *Supra* n.17.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

### B. In Closing Argument, The Government Endorsed a Broad Reading of Section 372 That Criminalizes Speech and Association Protected by The First Amendment.

"It is well settled that federal courts have the power to adopt narrowing constructions of federal legislation." *Boos v. Barry*, 485 U.S. 312, 330–31 (1988). "Indeed, the federal courts have the duty to avoid constitutional difficulties by doing so if such a construction is fairly possible." *Id.* at 331.

Here, in closing argument the Government urged the jury to convict the Spokane 3 based on a broad interpretation of Section 372 that violated their First Amendment rights to free speech and association. This Court has the duty to narrowly construe Section 372 to avoid any contravention of the First Amendment. Accordingly, Amicus requests that this Court "make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression" and free association. *See Bose Corp. v. Consumer Union of United States, Inc.*, 466 U.S. 485, 499 (1984) (cleaned up); *see also United States v. Lincoln*, 403 F.3d 703, 705 (9th Cir. 2005) ("In speech cases" courts "defer to the factfinder's findings on all but the constitutional facts"); *United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002).



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

1. To Comport With the First Amendment, Section 372's Prohibition on "force, threat, or intimidation" Must be Narrowly Construed to Only Criminalize Speech That Rises to the Level of a "true threat."

"True threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). Accordingly, "[w]hat is a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States*, 394 U.S. 705, 707 (1969) (per curiam).

To prove a defendant is criminally liable for making a "true threat," "the government must prove that a defendant both made an objective 'threat,' and that he did so with the necessary subjective mental state.'" *United States v. Anten*, 184 F.4th 1115, 1123 (9th Cir. 2026). In other words, true threats have both an objective and a subjective prong. *Id*.

Regarding the objective prong, "true threats" are defined as "serious expressions conveying that a speaker means to commit an unlawful act of violence." *Counterman*, 600 U.S. at 74 (cleaned up). "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context to not convey a real possibility that violence will follow (say, 'I am going to kill you



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

for showing up late.')" *Id.* "[W]hether a statement is a 'threat' must be judged through the eyes of a reasonable person." *Anten*, 184 F.4th at 1123.

The Ninth Circuit has held that, to the extent Section 372 criminalizes speech as "threat" or "intimidation," it is limited to criminalizing "true threats." *See United States v. Ehmer*, 87 F.4th 1073, 1121 (9th Cir. 2023); *see also United States v. Payne*, 2017 WL 480392 at *2 (D. Nev. Feb. 2, 2017) ("[T]he only reasonable interpretation of [Section 372] requires the Court to construe it as referring to true threats."). Again, speech only crosses the line into a "true threat" when it conveys an intent to "commit an unlawful act of *violence*." *Counterman*, 600 U.S. at 74 (emphasis added and citation omitted).

Further, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). While law enforcement "may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990).



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

The First Amendment thus allows people to lobby profanities and insults at law enforcement, so long as there is no "true threat" to inflict violence. For example, in *Duran*, a man made "obscene gestures" and "began yelling profanities in Spanish" from the passenger seat of a car at an officer. *Duran*, 904 F.2d at 1374. The Ninth Circuit acknowledged this conduct was "boorish, crass and, initially at least, unjustified," but "it was not illegal; criticism of the police is not a crime." *Id*. at 1377.

Similarly in *United States v. Poocha*, the Ninth Circuit upheld the defendant's right to make "statements of police brutality, . . . fuck this, fuck that, this is fucked, stuff along those lines," as well as a "fuck you" directed at law enforcement. 259 F.3d 1077, 1078-79 (9th Cir. 2001). The Court acknowledged that these words "do not suggest that his speech constituted a threat of violence unprotected by the First Amendment." *Id*. at 1079 n.2. The Court further acknowledged that this "speech is not stripped of its constitutional protection simply because it is accompanied by the aggressive gestures involved—clenching his fists and sticking out his chest." *Id*. at 1082 & n.4.

//



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

Here, in closing, the Government claimed that several statements made by protesters were evidence of conspiracy to "intimidate" or "threaten" under Section 372. Specifically, the Government cited the following in closing argument:

- "Cops won't help you. It's against state law." ECF No. 431, Ex. 7 at at 46.
- "Nazi. Go fuck yourself. Die. You can't leave. Do you have enough battery? No one is going to help you." *Id*. at 53.
- "[I]t's peaceful until it's not." *Id*. at 64.
- "[W]hat do you think it means when they are shouting as loud as they can, linking arms, 'Fuck you, you mother-fucking criminals.' Forral saying, 'Are you going to cry? Are you going to cry?' . . . That's intimidation. *Id*. at 67.
- "You hear 'No one is coming for you. How much battery do you have left in your phone?' . . . 'Are you scared now? Are you afraid that no one is coming to get you?'" *Id.* at 39.

Many of these statements are similar to the insults, criticisms, and profanity held to be constitutionally protected in *Duran* and *Poocha.* None are "serious expressions conveying that a speaker means to commit an unlawful act of violence." *Counterman*, 600 U.S. at 74 (cleaned up). The Government's reliance on these statements in closing improperly invited the jury to convict based on protected speech in violation of the First Amendment.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

2. To Protect the First Amendment Right to Association, Section 372 Must Be Narrowly Construed So That The Individual Criminal Acts of a Few Protesters are Not Imputed to The Entire Group.

The First Amendment "restricts the ability of the State to impose liability on an individual solely because of his association with another." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 919–20 (1982). "The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *Id*. at 908.

"In the heat of a protest, some activists might engage in spontaneous property destruction while others engage in planned acts of civil disobedience and still others simply march." Steffen Seitz, "Conspiracy and Social Movements, 124 Mich. L. Rev. 609, 636 (2026). "The looseness of conspiracy doctrine—requiring nothing more than the appearance of concerted action and an opportunity to create or join a joint scheme—makes it dangerously easy for prosecutors to criminalize mere proximity to protest activity and mere sympathy with movement aims." *Id*. at 659.

That is precisely what has happened here. Under the guise of a Section 372 conspiracy, the Government imputed the isolated acts of a few individuals to *all*



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

protesters who heeded the call to come to the federal building. This included isolated incidents where protesters pushed and spit at federal officers, slashed tires, and shouted insults in the heat of protest.[34] *See, e.g.,* ECF No. 431, Ex. 7 at 38–39, 43–44. In fact, the Government told the jury that the Spokane 3 could be held criminally liable for *any* of the actions of other protesters that were "reasonably foreseeable"—regardless of whether they agreed to such tactics—because "[t]he acts are what matters, not the aspirations." *Id*. at 38–39, 49.

Contrary to the Government's argument, Section 372 requires a narrower construction to avoid running afoul of the constitutional right to association. *Claiborne* is instructive on this point. There, the N.A.A.C.P. organized a boycott of white merchants over demands for racial equality and integration. 458 U.S. at 889–900. While the majority of the boycott activities "were uniformly peaceful and orderly," *id*. at 903, there were sporadic acts of assault and intimidation aimed at boycott enforcement in the Black community, including shots fired into houses. *Id*. at 904–905. The white merchants sued the boycott organizers, and the Mississippi

[34] Although, as explained *infra,* these insults were First Amendment protected speech.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

Supreme Court concluded the organizers had conspired to use "illegal force, violence, and threats" to ensure compliance with the boycott. *Id*. at 895.

While noting that "[t]he taint of violence colored the conduct of some of the petitioners," the U.S. Supreme Court held "[t]he burden of demonstrating that it colored the entire collective effort, however, is not satisfied by evidence that violence occurred or even that violence contributed to the success of the boycott." *Id*. at 933. Rather, "[f]or liability to be imposed by reason of association alone, it is necessary to establish that the *group itself* possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Id*. at 920 (emphasis added). Because there was no evidence in *Claiborne* that the groups organizing the boycott intended for it to be violently enforced, the U.S. Supreme Court declined to assign liability for the isolated violent incidents on First Amendment grounds. *Id*. at 921.

The same principle applies here. The Government explicitly encouraged the jury to convict the Spokane 3 for at least some independent actions of others at the protest, manufacturing guilt by association without proof of a group agreement. This broad interpretation of conspiracy liability under Section 372 infringed on the



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

Spokane 3's associational rights. *See id*. The Court should review the evidence on conspiracy closely to ensure that the jury's verdict did not turn on any unlawful acts by individuals for which there was not group agreement. *See Lincoln*, 403 F.3d at 705; *Hanna*, 293 F.3d at 1088.

Additionally concerning is that the case against the Spokane 3 was likely calculated to serve as a chilling "warning shot" to other anti-ICE protesters. Anyone holding similar views will now think twice before attending a lawful protest, lest they be found liable for the unlawful actions of others. *See* Seitz, 124 Mich. L. Rev. at 647 ("Even when speech itself is constitutionally protected, research shows that its proximity to conduct criminalized by the government makes it particularly vulnerable to chilling effects.")

In sum, the Government invited the jury to convict the Spokane 3 on several grounds that contravened the First Amendment. First, the Government told the jury that insults and taunts were sufficient to show protesters conspired to "intimidate" and "threaten" federal officials, without proving these statements were "serious expressions" of an intent to commit "violence"—and thus beyond the protections of the First Amendment. *See Counterman*, 600 U.S. at 74. Second, the Government



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

urged the jury to find the Spokane 3 criminally liable for the "reasonably foreseeable" actions of others, without arguing there was any agreement to engage in such tactics. *See Claiborne*, 458 U.S. at 919–20. This Court should conduct an independent assessment of the record to determine whether the verdict rested on unconstitutional grounds. *See Bose*, 466 U.S. at 499; *see also Lincoln*, 403 F.3d at 705; *Hanna*, 293 F.3d at 1088.

## III. CONCLUSION

"In a democracy, there must be a difference between opposition and threat, between dissent and danger, between protest and terrorism."[35] The Government has blurred these distinctions by targeting ICE protesters and urging the jury to convict based on an overexpansive, unconstitutional interpretation of Section 372. This Court has an obligation to correct course by: (1) granting discovery and an evidentiary hearing on the selective prosecution claim; and (2) independently assessing whether the jury's verdict rested on unconstitutional grounds.

Dated this 19th day of October, 2026.

[35] *Supra* n.31.



AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
P.O. BOX 2728
SEATTLE WA, 98111
(206) 624-2184

By: /s/ Jessica Wolfe

Jessica Wolfe, WSBA No. 52068
La Rond Baker, WSBA No. 43610
**American Civil Liberties Union of Washington Foundation**
P.O. Box 2728
Seattle, WA 98111
Telephone: 206.624.2184
jwolfe@aclu-wa.org
baker@aclu-wa.org

Attorneys for *Amicus* American Civil Liberties Union of Washington Foundation

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will effectuate service of a copy of this filing to all counsel/parties of record for the referenced cases.

DATED this 19th day of October, 2026.

/s/Tracie Wells
Tracie Wells, Paralegal
twells@aclu-wa.org
**American Civil Liberties Union of Washington Foundation**
P.O. Box 2728
Seattle, WA 98111
Telephone: 206.624.2184